Aubrey L. STEWART, Respondent,

v.

SIOUX CITY & NEW ORLEANS BARGE LINES, INC., Appellant.

No. 52962.

Supreme Court of Missouri,
Division No. 2.

Sept. 9, 1968.

Sandor Korein, Cohn, Cohn & Korein, East St. Louis, for respondent, Edward Davidson, Rooney, Webbe & Davidson, St. Louis, of counsel.

Elmer Price, Milton I. Goldstein, Gary T. Sacks, St. Louis, for defendant-appellant.

STOCKARD, Commissioner.

Sioux City and New Orleans Barge Lines, Inc., owner of the Motor Vessel KANSAS CITY, has appealed from a judgment in the amount of $40,000 entered pursuant to jury verdict in favor of Aubrey L. Stewart, a deckhand aboard that vessel, on his claim under the Jones Act, 46 U.S.C.A. § 688, for personal injuries allegedly resulting from negligence, and by reason of unseaworthiness of the vessel.

Appellant does not challenge the sufficiency of the evidence. The facts, accord-

ing to respondent, may be briefly summarized. On the night of August 4, 1964, pursuant to orders of the captain of the vessel, respondent went out on the unlighted deck after dark to tighten the "port face wire" (steel cable) by use of a hand winch. He "misjudged" the distance and stepped on another steel cable extending across his path parallel with and two or three inches above the deck which extended from an air winch to the barges secured to the vessel. There was grease on the cable and when he stepped on it he slipped and lost his footing, and then fell against the hand winch and was injured.

Instruction 2, Respondent's verdict directing instruction, was as follows:

"Your verdict, must be for plaintiff if you believe:

First, defendant failed to provide

a. reasonably safe conditions for work, or

b. a seaworthy vessel;

Second, defendant in paragraph a was negligent, or

in paragraph b, its vessel was unseaworthy, and

Third, such negligence or unseaworthiness directly resulted

in whole or in part in injury to plaintiff."

In other instructions negligence and unseaworthiness were defined. Appellant assigns as error the refusal of the trial court to give the following instruction.

"The court instructs the jury that while the plaintiff did not assume the risk of an unsafe place to work, he did assume the normal risks incident to his employment as a deckhand on a vessel operating in the inland waterways."

Appellant argues that while a wire or cable stretched across an aisle of a grocery store would not be the usual condition that a grocery store employee would expect to encounter, a cable leading from a winch and stretched two or three inches above the deck of a towboat "was the usual condition of the deck and a condition of which [respondent] was thoroughly aware," and that by refusing the requested instruction the court "denied the jury the right to find that [respondent's] accident, if any, was caused solely by the normal risks incident to his employment as a seaman, rather than because of the negligence of [appellant]."

Respondent's verdict directing instruction submitted negligence under the Jones Act in failing to provide reasonably safe conditions for work, and also unseaworthiness of the vessel under general maritime law, which is not based on negligence. The defense of "assumption of risk" is not available to an employer in an action based on the Jones Act, Roberts v. United Fisheries Vessels Co., 1 Cir., 141 F.2d 288, certiorari denied, 323 U.S. 753, 65 S.Ct. 81, 89 L.Ed. 603, and a seaman does not assume the risk of an unseaworthy vessel even if the condition is known. The New Berne, 4 Cir., 80 F.2d 244; Mahnich v. Southern Steamship Company, 321 U.S. 96, 64 S.Ct. 455, 88 L.Ed. 561. However, if a seaman is injured in one of the "normal hazards of the business," or as sometimes said, the "usual risks of the calling," without fault on the part of his employer (that is, not as the result of negligence and not as the result of an unseaworthy vessel), the seaman stands or "assumes" the loss. The "usual risks of the calling are not shifted on to the employer if the employer is guiltless of any fault." Roberts v. United Fisheries Vessels Co., supra. That was the situation in Repsholdt v. United States, 7 Cir., 205 F.2d 852, where a seaman was injured during a storm at sea. ("Storms and heavy seas are 'obvious and well known risks of the business' of all seamen"). There apparently was no claim of unseaworthiness, and the record was "barren of proof of negligence" on the part of the employer.

Generally speaking, the abstract statement of law in the requested instruction,

though cryptic in nature, may be assumed to be correct. The instruction did not direct a verdict and did not purport to be a converse instruction. It is in the form of a cautionary instruction, but perhaps a better description in this case would be an "advisory" instruction.

The issues before the jury were whether or not the injuries of respondent were sustained in whole or in part as the direct result of the negligence of appellant submitted in Instruction 2, or as the direct result of unseaworthiness of the vessel, also submitted in Instruction 2. Appellant argues they were not, and if they were not then the injuries, to use the words of appellant in its brief, were "caused solely by the normal risks incident to his employment as a seaman." In other words, appellant contends that the "sole cause" of respondent's injuries was something other than its negligence and something other than the unseaworthiness of the vessel.

The defense of "sole cause" is now presented to the jury by use of a converse instruction, and the facts which support the contention that something other than the submitted negligence, and in this case, something other than unseaworthiness, was the sole proximate cause of the injuries may be argued to the jury. In this case, appellant did request and the trial court gave an instruction in the form of MAI 29.03(5), modified to meet the submissions in Instruction 2, conversing both negligence and unseaworthiness. In that method, appellant's contention of "sole cause" was presented to the jury.

The requested instruction was not necessary to present to the jury the issue of whether respondent's injuries resulted solely from the "normal risks incident to his employment as a deckhand," or whether the submitted negligence or unseaworthiness of the vessel contributed in whole or in part to his injuries. It was a cautionary instruction, the giving of which was discretionary with the trial court, and under the circumstances its cryptic language could easily be as confusing as enlightening. See the discussion in the concurring opinion in Tiller v. Atlantic Coast Line Railroad Company, 318 U.S. 54, 63 S.Ct. 444, 87 L.Ed. 610. See also Santos v. American Export Lines, Inc., 2 Cir., 339 F.2d 206, where it was held to be discretionary with the trial court to refuse to instruct the jury that a seaman does not assume the risks of employment. We find no abuse of discretion in this case in refusing the requested instruction.

Appellant next contends that Instruction 2 was erroneous because it combined in one instruction two separate theories of recovery: (1) negligence under the Jones Act and (2) unseaworthiness under the general maritime law. Appellant argues that the instruction as given permitted the respondent to receive a double recovery.

Appellant admits that a claim based on negligence under the Jones Act may be combined with a claim of unseaworthiness, and that no election of remedies is required. See German v. Carnegie-Illinois Steel Corporation, 3d Cir., 156 F.2d 977. Appellant argues, however, that only one recovery for the injuries sustained may be recovered, Borgman v. Sword Line, Inc., Sup., 81 N.Y.S.2d 445, and that by combining the two theories of recovery in the same instruction "the jury was led to believe that [respondent] was entitled to recover on both theories." It is contended that the proper way "to have cleared this confusion" would have been to give separate instructions on the two theories of recovery, and appellant cites Borgman v. Sword Line, Inc., supra, and Pearson v. Tide Water Associated Oil Co., Cal.App., 223 P.2d 669. In the Borgman case it is stated that "Both issues [negligence under the Jones Act and unseaworthiness under general maritime law] with proper instructions must be submitted to the jury but damages are recoverable on one issue only." In the Pearson case erroneous and confusing instructions were given, and the court stated that "Both issues should have been mentioned separately to the jury and submitted each

with the proper instructions * * * and an instruction excluding double recovery on the same facts should have been added."

The effect of the rulings of these cited cases is that the injured seaman is entitled to have each theory of recovery submitted to the jury, but that only one recovery for the injuries sustained may be had. Neither case purports to rule that the procedural requirements necessary to accomplish that result in the particular jurisdiction in which the case arose are required in this state. We are of the opinion that in this case the instructions, which followed our procedural rules for the submission of issues to the jury, accomplished this required result.

Instruction 2 submitted in the disjunctive two theories of recovery, negligence and unseaworthiness. Each was supported by substantial evidence. Therefore, the jury could have found that either was the direct cause in whole or part of respondent's injuries, or it could have found that each contributed or concurred in causing in whole or part his injuries. "The Jones Act claim for negligence and the maritime claim for unseaworthiness provide seamen with two different grounds of relief for the commission of the same wrong." Troupe v. Chicago, Duluth & Georgian Bay Transit Company, 2 Cir., 234 F.2d 253. We see no practical distinction in submitting two theories of negligence in the disjunctive (see MAI 24.01), which in effect are two grounds for recovery, and the submission in this case. Respondent sustained one injury for which he had two grounds (negligence under the Jones Act and unseaworthiness of the vessel) to recover damages. The question then is whether Instruction 2, when read with the other instructions, would cause a reasonable jury to believe that if it found that appellant was negligent in the respect submitted, and that it failed to provide a seaworthy vessel, each of which contributed or concurred in causing in whole or part respondent's injuries, that it should award total compensatory damages for the injuries sustained based on negligence and also based on unseaworthiness.

Instruction 8, pertaining to the measure of damages, followed MAI 4.01 which is to be used whether single or multiple theories of negligence are submitted. Instruction 8 provided that if the jury found "the issues in favor of the plaintiff," then it should award him "such sum" as would fairly and justly compensate him "for any damages you believe he sustained and is reasonably certain to sustain in the future as a direct result of the occurrence mentioned in the evidence." This instruction limited the award of damages to one sum for "the occurrence." It did not authorize an award for each theory or ground for recovery. In our opinion no jury composed of reasonably intelligent persons could have been caused to believe that if it found appellant negligent in the respect submitted, and also found that the vessel was unseaworthy, it could or should award a double recovery of damages for the injuries sustained.

Appellant also asserts that the trial court erred, and that it "compounded" the error in giving Instruction 2, which we have held was not error, in refusing its requested instruction, which (with the addition of the letters in brackets we have inserted) was as follows:

"The Court instructs the jury that [a] the plaintiff is seeking recovery against the defendant under two separate theories: the first theory being based on the alleged negligence of the defendant and the second theory being based on the alleged unseaworthiness of the Motor Vessel KANSAS CITY. [b] The burden of proof as defined in Instruction Number —— as to negligence and as to unseaworthiness is upon the plaintiff. [c] Both theories are subject to mitigation of damages by virtue of contributory negligence of the plaintiff under Instruction Number ——. [d] The Court instructs you that if you find that the plaintiff is entitled to any recovery, he is not entitled to recover on both theories and

you must indicate on your verdict on what theory, if any, such recovery is based."

This instruction was properly refused. The portion we have designated as [a] was covered by Instruction 2. The portion designated as [b] was presented to the jury by Instruction 4 in the form provided by MAI 3.01. The portion designated as [c] was presented by Instruction 8 by modifying forms approved in MAI and of which there is no complaint. The portion designated [d] calls for a form of special verdict contrary to Civil Rule 71.02, V.A. M.R., which provides that "In every issue for the recovery of money only * * * the jury shall render a general verdict." Upon request, the trial court in its discretion may have deemed it advisable to give a cautionary instruction that respondent was not entitled to recover for the same injuries on each submitted theory of recovery, but it was not error to fail to give such an instruction in the absence of a request, and it was not error to refuse the requested instruction containing the other redundant provisions.

By its third point appellant assigns as error the refusal to admit into evidence certain hospital records and various excerpts from other hospital records. These records and entries were offered to show that respondent was inclined to imagine injuries, a contention which had some support in respondent's evidence.

Appellant offered several pages of hospital records of the Veterans Administration pertaining to a hospitalization of respondent in 1963, approximately seventeen months prior to the occurrence which resulted in the pending litigation. Briefly stated, those records contained a recital of the history of respondent's then complaint of headaches. The recital was made of record by Dr. Veronica M. Pennington, M.D., and while it related the results of a physical examination, which was for the most part negative, it also contained statements made to the doctor by respondent's father that respondent had "given him trouble" since he was three years old, that he wrecked and demolished automobiles, drank since he was 17 years of age, failed to write home when in the service, had been court-martialed in the army, and that a short time previously he had attempted to rape two small girls. The recital by Dr. Pennington also contained statements made by appellant's sister that he had been a "rough character all of his life," and that he had married a woman who had been recently divorced and was pregnant but who had died a few weeks before his hospitalization. At the conclusion of the record, the doctor entered her diagnosis as "Sociopathic personality disturbance, anti-social reaction with alcoholism." The remaining portion of the hospital records consists of a report by a clinical social worker which recites substantially the same statements of respondent's father and sister, and in addition statements of the father that respondent was a compulsive liar, could not be trusted, and was unreliable. Certain matters pertaining to his family and home life were also set forth.

Respondent admits that the hospital records were properly identified and kept in the regular course of business. However, The Uniform Business Records as Evidence Law §§ 490.660–490–690, RSMo 1959, V.A. M.S., provides that after proper identification and proof of mode of preparation the record is admissible in evidence "if, in the opinion of the court, the sources of information * * * were such as to justify its admission."

The offered records show on their face that a substantial portion of their contents consists of hearsay statements made by respondent's father and sister to the doctor and social worker who placed those hearsay statements in the hospital records. Neither the doctor nor the social worker could have testified over objection to those hearsay statements if personally present. It is equally clear that the diagnosis of the doctor was based, at least in substantial part, on the hearsay statements recorded in the report. The Uniform Business Records as Evidence Law does no more

than remove the objection that the record constitutes hearsay on the basis that the one who prepared it is not present for cross-examination. It does not make admissible in evidence that which otherwise would not be admissible. State ex rel. State Highway Commission v. Koberna, Mo., 396 S.W.2d 654, 666; Allen v. St. Louis Public Service Company, 365 Mo. 677, 285 S.W.2d 663, 55 A.L.R.2d 1022; Sources of Proof (Mo. Bar C.L.E.) § 4. "The trial court must of necessity be given a large discretion in his determination of whether the statutory requirements for admission of the business records have been satisfactorily complied with." Rossomanno v. Laclede Cab Company, Mo., 328 S.W.2d 677, 683. We cannot say in this case that the determination of the trial court that the sources of information were not such to justify the admission of the records was an abuse of that discretion.

Appellant also offered four isolated statements from other pages of the 1963 hospital records. In view of our ruling concerning portions of hospital records made in 1965, we need not discuss further the offer of these excerpts from the 1963 records, but in the event of a new trial the parties may be guided by what we have said concerning the 1963 and 1965 records.

Appellant also offered in evidence twelve excerpts from the hospital records of the Veterans Administration pertaining to respondent's hospitalization in 1965, which was after his injury on appellant's boat. Some of the excerpts were clearly not admissible, and we shall not discuss them. However, some were improperly excluded, and we shall discuss them sufficiently to demonstrate the error.

A conference was held between counsel and the court, and the hospital records were discussed. Respondent pointed out to the court the portions he intended to read to the jury, and appellant did the same. Respondent read to the jury from page 4 of the records as follows: "This thirty-two year old white male who dated the onset of this difficulty to August 1964, at which time he was injured in an accident on a towboat. From that time on, he spent approximately ten weeks in various hospitals with conservative therapy for his low back difficulties. He states this therapy did not alleviate his difficulties. He presented himself at this hospital with complaints of low back pain with radiation of the left lower extremity and stating that his left leg was extremely weak. Physical examination was pertinent only in the finding in and about the lower extremity, There was tenderness over the L-4, L-5–L-5, S-1 interspaces with moderate paraspinous muscular spasm present. Patient could not bend over and touch his toes. However, straight leg raising was completely negative bilaterally. When examined, the patient could not move his left lower extremity at all. There was a persistent S-1 hypesthesia of the left foot present. Deep tendon reflexes were equal bilaterally and active. The patient's laboratory studies were within normal limits as were chest x-rays and lumbosacral spine. There was a questionable narrowing of L-5, S-1 interspace. Patient was placed on concervative therapy in the hospital and given the benefit of the doubt. A myelogram was done which was considered to be completely negative. Neurosurgical staff felt the study was completly within normal limits. After being told this the patient became ambulatory, using the leg which he had previously stated was very weak. Prior to that, the ward had to help to carry him to the bathroom. After this, the patient became extremely hostile, complaining bitterly day in and day out. The pain moved about from one hip to the other and down over the coccygeal region. The patient went AWOL on March 14, 1965."

Appellant offered to read from page 4 the following item entitled "Diagnosis" which respondent had omitted and did not read:

"(1) Sociopathic personality with antisocial behavior;

(2) Severe psychophysiological musculoskeletal reaction." Respondent objected

because "the reading of the record indicates that this doctor who signed this made the diagnosis based on what the * * * consulting psychiatrist had said, and the consulting psychiatrist's opinion was based again on speculation and also on hearsay from product or information from someone other than the plaintiff." Respondent's counsel also stated that the diagnosis offered to be read was based on the diagnosis made in 1963. The objection was sustained.

We are somewhat handicapped in that the original hospital records, or copies of them, are not a part of the record. However, respondent read from page 4, and appellant offered to read from page 4 the diagnosis apparently based on that portion read by respondent. What respondent read purports to constitute the record entry of a doctor in which he recites his findings based on an examination of respondent, and in which he reports various other matters which had come to his knowledge. He related the fact that a myelogram was done, obviously by someone else, and he related the views of the neurosurgical staff. He also related certain things obviously told him or which he learned from other record entries, such as the fact that respondent had to be carried to the bathroom, but that when told of the findings of the neurosurgical staff he became ambulatory. We can find nothing in the record before us which indicates that the doctor who made the report read by respondent based his diagnosis on what a consulting psychiatrist had said, and that the psychiatrist's diagnosis was based on the diagnosis in 1963, unless it is the report that the "neurosurgical staff felt the study was completely within normal limits." If that "study" included what a consulting psychiatrist said which in turn was based on the 1963 diagnosis, *respondent was the one who read to the jury the fact that that study was made and its results.* What respondent has done is to place before the jury the facts found by the doctor who made the report, and also the facts reported to him by the "staff" and

others which apparently took into consideration the 1963 hospitalization. Then, after getting these matters before the jury, respondent objected to the diagnosis of the doctor based on those matters. We are of the opinion that if respondent places before the jury the basis upon which the diagnosis of a doctor is made, even though it included matters otherwise not admissible, he cannot object to the expert opinion in the form of a diagnosis of that doctor based on the material that he placed before the jury. We think the trial court erred to the prejudice of the appellant in excluding the diagnosis offered. See Allen v. St. Louis Public Service Company, 365 Mo. 677, 285 S.W.2d 663, 667.

While we need not elaborate, other matters were wrongfully excluded. As noted, respondent read at length from page 4 of the medical records, including what others told the reporting doctor. Appellant offered to read from page 4 the statement that "The radiologist reported that there was a possibility of a disc, but it would have to be on the opposite side from patient's complaints." This was excluded, apparently because the word "possibility" denoted something less than medical certainty. There was no objection that the report of the radiologist should have been offered. But, the fact that such a disc, if it existed, would "have to be on the opposite side" from respondent's complaints was an expert opinion material to appellant's contention and not subject to the objection that was made. If respondent read what was reported to the doctor by the neurosurgical staff, appellant should have been permitted to read from the same document what was reported to the doctor by the radiologist, if not within the scope of a proper objection.

The offered excerpts were material, and their exclusion was prejudicial to appellant in view of its contention, supported by other evidence, that to some degree respondent's claimed injuries were imagined.

The exclusion of certain other matters appears to be questionable. We need not discuss them, but as to some the record be-

fore us is not sufficiently complete to rule the question because the hospital records, or copies of them, from which the portions were taken are not before us; an undesirable practice when issues of admissibility are to be presented on appeal.

The remaining issue of excessiveness of the verdict need not be ruled on this appeal.

For the erroneous exclusion of evidence, the judgment is reversed and the cause remanded.

BARRETT and PRITCHARD, CC., concur.

PER CURIAM:

The foregoing opinion by STOCKARD, C., is adopted as the opinion of the Court.

All of the Judges concur.