**William J. BERRA and Marilyn W. Berra, Plaintiffs/Appellants,**

v.

**UNION ELECTRIC COMPANY, Defendant/Respondent.**

**No. 58082.**

Missouri Court of Appeals, Eastern District, Division Three.

Feb. 13, 1991.

Michael J. McKitrick, Morganstern, Soraghan, Stockenberg, McKitrick & Gould, Clayton, for plaintiffs/appellants.

James J. Virtel, Ann Elizabeth Buckley, Armstrong, Teasdale, Schlafly, Davis & Dicus, St. Louis, for defendant/respondent.

REINHARD, Presiding Judge.

The parents of William Berra brought this action against Union Electric for his wrongful death. The jury returned a verdict for $130,000 for plaintiffs and assessed 25% fault to Union Electric and 75% to William Berra which resulted in an actual verdict for $32,500. Plaintiffs appeal. We affirm.

Plaintiffs' son was a lifeguard at the Creve Coeur Country Club. On Saturday, July 20, 1985, he and his fellow lifeguard, Greg Myers, noticed that the flagpole line was tangled at the top of the flagpole. They connected together a number of aluminum poles that were normally used in cleaning the pool, taped a garden tool shaped like a claw to the top of the pole and attempted to "snag" the tangled line. Because the skimmer pole was approximately 40 feet long and the flagpole was 45 feet tall they were unable to reach the top

of the flagpole. Witnesses testified that plaintiffs' decedent suggested standing on a chair to reach the top of the flagpole. Decedent held the skimmer pole while Myers climbed up on the chair. Decedent handed the pole to Myers who then attempted to elevate it towards the top of the flagpole. The skimmer pole swung in an arc and made contact with a bare, high-voltage electrical wire. Both young men were electrocuted. Because the incident occurred on a warm Saturday morning numerous witnesses saw all or part of the incident. Additional facts will be added where necessary to explain our decision.

■ Plaintiffs allege that the trial court erred in its submission of defendant's tendered comparative negligence Instruction No. 7 which stated:

### Instruction No. 7

In your verdict you must assess a percentage of fault to decedent William Berra, whether or not defendant Union Electric Company was partly at fault if you believe:

First, either:

decedent failed to keep a careful lookout for the electric lines, or

decedent caused or contributed to cause the pool skimmer to come into contact with an electric line, and

Second, in any one or more of the respects submitted in Paragraph First, was thereby negligent, and

Third, such negligence directly caused or directly contributed to cause the death of decedent.

The term "negligent" or "negligence" as used in this instruction means the failure to use ordinary care. The phrase "ordinary care" means that degree of care that an ordinarily careful and prudent person would use under the same or similar circumstances.

Plaintiffs object to this instruction because they contend that the evidence did not support the conclusion that decedent "caused or contributed to cause the pool skimmer to come into contact with an electric line." We agree with plaintiffs that a disjunctive instruction requires that there be evidence

to support all submissions. *Brown v. Shawneetown Feed and Seed Company,* 730 S.W.2d 587, 589 (Mo.App.1987). The defendant is entitled to have all evidence considered in the light most favorable to its comparative fault instruction and is given the benefit of any favorable inferences. Plaintiffs' evidence must be disregarded unless it tends to support the grounds of comparative fault submitted in the instruction. *Ethridge v. Gallagher,* 773 S.W.2d 207, 211 (Mo.App.1989).

■ For this instruction to have been submitted, therefore, the evidence must have shown that a) decedent failed to keep a careful lookout for the line, *and* b) decedent caused or contributed to cause the pool skimmer to come into contact with the electric line. Our review of the evidence convinces us that both assertions in instruction number 7 were supported by the evidence. Plaintiffs testified that their son had cleaned the gutters at home, that they had warned him to keep his ladder away from the electric wires and that he should stay as far away as possible. They told him not to let a metal object contact the wires, and thought he understood the danger. He had two years of college and had taken a number of safety courses in order to become certified as an ambulance driver. Witnesses testified that they were aware of the existence of the power lines, that the lines were not hidden, and that there was a transformer on one of the poles that went in the direction of the power room. "When one is charged with a duty to look, and to look is to see, he is held to have seen what looking would have revealed." *Finninger v. Johnson,* 692 S.W.2d 390, 399 (Mo.App. 1985).

Plaintiffs' assertion that decedent did not contribute to the cause of the incident is equally without merit. One witness testified that he watched them put two of the aluminum poles together and put some kind of a garden tool on the end so they could reach the top of the flag pole. David Ingols, another witness said:

They had a pole in an upright position, they had taken ... a garden trowel.... and they somehow fastened that, con-

nected that on the end of the pole, and they had it in the upright position already and they were trying to get the flagpole untangled.... It was about five foot from where they needed to get to where they were trying to get the line untangled.... I think, at that time, I think they were both holding it ... before they got to rest you could see there was quite a bit of sway involved at the top of the pole. At least a foot, foot or two sway at the top. It was pretty limber.... It was limber at the top, and they got the scratcher setup against it and they saw it wasn't long enough. Bill said something to Greg. "It's not going to reach." He suggested that one of them get on a chair, not the chair right here, not one of the loungers, but just a vinyl chair ... I saw [Greg] start to climb on the chair.... Bill was kind of supporting him. I was, I guess, in a state of flux right then because with that limber of the pole I was just—I could see the high line over there, the utility line, and gee, if they lose that, that's all over. Right then one of the kids yelled. I turned around to see what they were doing and I heard a noise and looked back and Greg was being knocked off the chair.... [The last time I noticed the pole] well, they both had it. Greg was climbing up to the chair and Bill was handing him the pole.... They both fell to the ground.... The pole lodged in between them.

Another witness said "[Berra] was standing next to him [Greg] I'm not sure if he was helping him hold the pole or if he was helping to keep Greg balanced in the chair, but it was just the two of them very close together, and the pole, both of them trying to get it up."

From the above evidence and the reasonable inferences therefrom the jury could have concluded that the decedent contributed to cause the pool skimmer to come in contact with the electric wire. Thus we see no error in the submission of this instruction.

Plaintiffs also assert that the trial court erred in its refusal to admit portions of testimony from two of plaintiffs' witnesses.

The admission or exclusion of evidence is left to the discretion of the trial court. We will not disturb its decisions unless we find an abuse of discretion. *Moreland v. State Farm Fire and Cas. Co.*, 662 S.W.2d 556, 565 (Mo.App.1983).

Plaintiffs asserted that if defendant had moved the lines toward the street and away from the pool the accident would have been avoided. First, Edward R. Dabler, a civil engineer, testified that he had examined St. Louis County records and that there was a 60 foot strip of land to the west of the country club property which was "dedicated to public use for street and utility purposes ... which established the street and the street right-of-way. It was established by the owner of the property for a street." He said the 60 foot strip had not been developed as a street and was unimproved land. However, an engineer employed by defendant indicated that the poles could only be moved to the extent that the wires would not overhang the edge of the easement strip.

Plaintiffs then attempted to prove by the use of a hypothetical question to its expert, an electrical engineer, that defendant could have moved the electric line from the private easement to the public right-of-way west of the pool property. Defendant objected to the hypothetical and after the court sustained the objection plaintiffs made an offer of proof.

When challenged by defense counsel during plaintiffs' offer of proof this expert admitted that he did not know whether defendant had a franchise from the City of Creve Coeur which would allow them to place the pole in a public right-of-way. He testified that the dedication of the road easement for utility purposes did not give electric utilities the authority to put the poles on the road easement. It required a franchise which means the utility is granted permission "... to serve the community with electric energy on a generally exclusive basis and permits them to use portions of public right-of-way for the location of wires, fixtures and appurtenances." In testifying that he did not know whether

defendant had a franchise from the City of Creve Coeur he said, "By virtue of the fact that they had service and they had franchises in virtually every community they serve it is reasonable that they do have a franchise in the City of Creve Coeur." He finally told the court he had not made a search to determine whether Union Electric was required to get permission to put a pole on the right-of-way "but it is customary that they have to do it." The court repeatedly told plaintiffs' counsel that someone from the city should be brought down to testify as to the arrangement between the defendant and the city with respect to the placing of poles on the street right-of-way. No such evidence was produced.

■ Thus, this witness was making an assumption based upon his experience with other communities. The opinion of an expert witness must not be based upon assumptions but upon facts within the expert's knowledge or upon a hypothetical question that includes proven facts. *Lazane v. Bean*, 782 S.W.2d 804, 806 (Mo. App.1990). We do not believe the trial court abused its discretion in denying plaintiffs' offer of proof. This testimony was properly excluded because plaintiffs did not prove that the proffered opinion was predicated upon any factual basis.

■ The second witness whose testimony was not admitted was a businessman who sold flags and installed flagpoles. His testimony would have been that the "recommended flag size for a 45 feet tall flagpole is 8 feet by 12 feet." Plaintiffs sought to introduce this testimony to complete a chain of inferences leading to the conclusion that the power line was too close to the flagpole under "National Electric Safety Code Standards." Those standards prescribe a horizontal clearance of five feet between an electric line and a flagpole or a clearance of five feet plus the length of the flag. The pole was 8 feet 8 inches from the line. The flag was not admitted into evidence and estimates varied as to its length. The trial court held the testimony to be irrelevant to the issues of the case and thus inadmissible.

The decision of whether evidence is relevant lies within the discretion of the trial court and will be upheld unless the decision is an abuse of the trial court's discretion. *Nelson v. Mo. Highway and Transp. Com'n.*, 734 S.W.2d 521, 524 (Mo.App. 1987). "Evidence in the form of an offered fact is relevant if it tends to prove or disprove a fact in issue, or corroborates evidence which is relevant and which bears on the principal issue." *Lawson v. Schumacher and Blum Chevrolet Inc.*, 687 S.W.2d 947, 951 (Mo.App.1985). The flag was not flying at the time of the incident and there was no evidence that the flag or the lack of a flag had any bearing on the incident. We agree with the trial court that the evidence was irrelevant and thus inadmissible. "Relevancy is that relationship between the offered fact and fact in issue to such a degree that the truth of the offered fact makes probable the existence of the fact in issue." *Id.* Clearly, no such relationship existed in the present case.

Judgment affirmed.

CRANDALL, C.J., and CRANE, J., concur.