**Curtis HOEFT, Appellant,**

v.

**LOUISVILLE LADDER CO., Respondent.**

**No. WD 48801.**

Missouri Court of Appeals, Western District.

June 6, 1995.

Motion for Rehearing and/or Transfer to Supreme Court Denied Aug. 1, 1995.

Application to Transfer Denied Sept. 19, 1995.

Thomas L. Stewart, St. Louis, John H. Norton, Kansas City, for appellant.

William H. Sanders, Michael A. Childs, Kansas City, for respondent.

Before SPINDEN, P.J., and ULRICH and SMART, JJ.

SMART, Judge.

This action was brought by Curtis Hoeft, who was seriously injured when an aluminum ladder he was holding came in contact with a high voltage power line. Mr. Hoeft's suit included a claim against Louisville Ladder Company for manufacture of a defective product and for failure to warn. At the conclusion of the trial in Clay County, the jury assessed plaintiff's damages at $6.5 million and allocated 95% of the fault against the plaintiff. Three percent of the fault was allocated to the rental company supplying the ladder and two percent of the fault was allocated to Louisville Ladder. Plaintiff appeals the verdict, contending that the jury was improperly instructed.

Curtis Hoeft was a painter. In 1989, Mr. Hoeft was working for a painting contractor

named Mark Welch in Columbia, Missouri. In September, 1989, the Newman Center near the University of Missouri–Columbia contracted with Mr. Welch for services designed to restore and repaint doors and window frames at the Newman Center Chapel. Because the windows were well above the ground, the crew used extension ladders provided by Mr. Welch to reach the windows. On the north side of the chapel, however, the windows were so high that they could not be reached by the 24 foot ladders provided by Mr. Welch. Mr. Welch decided to rent a 40 foot aluminum extension ladder, which was set up to allow Mr. Hoeft to work on the north side. When work on one window was complete, Mr. Welch and Mr. Hoeft decided to move the ladder to the northwest corner of the building and then move east across the side of the chapel. While Mr. Hoeft was nearby, Mr. Welch began to move the long extension ladder. The ladder at this point was extended to approximately 33 feet. Mr. Hoeft went to assist Mr. Welch in moving the ladder. They moved the ladder while holding it in a vertical position. The men had to move the ladder very carefully because of the possibility that the ladder could fall either into the church windows on one side, or into high voltage power lines on the other side. As the men placed the ladder on the ground near the northwest corner, the ladder swung out and contacted the power lines, causing the immediate electrocution death of Mr. Welch and causing very serious and disabling injuries to Mr. Hoeft.

In his action against Louisville Ladder Corp., the manufacturer of the ladder, and Lindsey Rentals and Sales, Inc., from whom Mr. Welch had rented the ladder, Mr. Hoeft alleged that Louisville Ladder sold the ladder in a defective condition unreasonably dangerous when put to a reasonably anticipated use, that the ladder was used in a manner reasonably anticipated, and that the defective condition caused or contributed to cause plaintiff's damages. Plaintiff also alleged that the ladder was unreasonably dangerous when put to a reasonably anticipated use without knowledge of its characteristics, that defendant did not give an adequate warning of the danger, that the product was used in a reasonably anticipated manner, and that the failure to give an adequate warning caused or contributed to cause damage to plaintiff. Defendants denied liability and contended that fault should be assessed to plaintiff for allegedly negligent actions.

The case was tried to a jury in Clay County in September, 1993. The jury assigned 95 percent of the fault to plaintiff. Two percent of the fault was allocated to Louisville Ladder Company, and three percent was allocated to Lindsey Rental and Sales, Inc. Judgment was entered in plaintiff's favor and against Defendant Louisville Ladder in the amount of $130,000 and against Defendant Lindsey in the amount of $190,000. Plaintiff Curtis Hoeft now appeals the judgment as to Louisville Ladder, contending that the trial court erred in giving the comparative fault instruction because the evidence did not support the disjunctive submissions of alleged contributory fault, and such submissions were not pleaded in Defendant Louisville Ladder's answer. The claim against Lindsey Rentals was settled after the verdict in this case and is not before us on this appeal.

### Evidence Supporting the Disjunctive Submissions

Under § 537.765, RSMo 1994, the defendant in a products liability action may plead and prove the fault of the plaintiff in order to diminish proportionately the amount awarded as compensatory damages. Plaintiff–Appellant does not challenge defendant's right to disjunctive submissions generally, but contends that particular submissions were not supported by the evidence.

The comparative fault instruction in question reads as follows:

### INSTRUCTION NO. 10

In your verdict, you must assess a percentage of fault to plaintiff Curtis Hoeft, whether or not defendant Louisville Ladder or Lindsey Rentals were partly at fault if you believe:

First, either;

Plaintiff used the ladder where it could come into contact with power lines, or

plaintiff helped move the 40 foot extension ladder in an extended position too close to overhead power lines, or

plaintiff was helping to erect the 40 foot extension ladder too close to overhead power lines, or

plaintiff failed to maintain control of the ladder, or

plaintiff failed to have the overhead power lines de-energized, or

plaintiff failed to use a different tool such as a saddle, scaffold, wood, or fiberglass ladder, or

plaintiff failed to put a rope around the top of the 40 foot extension ladder and have someone control it from the roof so it would not come into contact with the power lines, and

Second, plaintiff Curtis Hoeft was thereby negligent, and

Third, such negligence of plaintiff Curtis Hoeft directly caused or directly contributed to cause any damage plaintiff Curtis Hoeft may have sustained.

■ Plaintiff's appeal focuses on the submissions concerning Mr. Hoeft's failure to have the power lines de-energized, his failure to use a different tool to reach the window, and the failure to put a rope around the top of the ladder and have someone control it from the roof. Each disjunctive submission in a comparative negligence instruction must be supported by the evidence. *Berra v. Union Electric Co.,* 803 S.W.2d 188, 190 (Mo. App.1991). The defendant is entitled to have all the evidence considered in the light most favorable to its comparative fault instruction and is given the benefit of any favorable inferences. *Id.* Nevertheless, mere speculations or assumptions will not suffice since the evidence to support a comparative fault submission must be substantial evidence. *Finninger v. Johnson,* 692 S.W.2d 390, 393 (Mo. App.1985).

### *Failure to De–Energize Power Lines*

■ First, we examine the evidence related to the proposition that Mr. Hoeft failed to have the power lines de-energized. We note that Captain Spry, a fire captain with the Columbia Fire Department, testified that the most effective way to avoid electrical shock when working around power lines is to have the power shut off. Virgil Flanigan, a mechanical engineer and a professor of chemical engineering at the University of Missouri–Rolla, testified that Mr. Hoeft and Mr. Welch

could have had the city shut off the power to the Newman Center. He said that he assumed that it would have required cutting off power to a large part of the city, but he did not know the size of the area which would have been affected by the shut-off. Defendant Louisville introduced answers given by the City of Columbia in which the city stated that the city will cut off the power on request if the customer in question is the only one affected, or if the other customers who would be affected would all agree. The city further stated that the Newman Center would have been the only property without power if the power line in question had been shut off on the date of this incident. Then, David Pringle, President of Louisville Ladder, testified that having the power shut off is the safest way to work near power lines. He also testified on cross-examination as follows:

Q: And do you think that's the kind of information that the ordinary consumer or painter knows, that all I have to do is pick up the telephone and call Kansas City Power and Light and say, shut the power off? Or, in this case, call Columbia Power and Light in Columbia, Missouri, and say, shut the power off to the Newman Center, I'm going to paint windows? Do you think the ordinary painter knows that?

A: Yes.

The record shows that Pringle had experience with painters and with safety commissions. While the weight of the opinion of Mr. Pringle (as president of defendant company) may be subject to argument, it nevertheless was direct testimony which the jury could regard as having some probative value. Thus, this submission was supported by the evidence.

### *Failure to Use a Different Tool*

■ Plaintiff also contends that the submission asserting that Mr. Hoeft was negligent in failing to use a different tool to reach the window was unsupported by the evidence. Dr. Flanigan testified that the tragic incident could have been avoided if the workers had used a different tool to reach the windows, such as a saddle, scaffolding, fiberglass ladder, or wood ladder. There was evidence that Curtis Hoeft knew that fiberglass ladders and wooden ladders would be

safer to use around power lines. Plaintiff's expert, Edward McGuire, also testified that Hoeft knew or should have known about fiberglass ladders. Captain Spry also testified that he would expect a professional painter to know that a fiberglass ladder would be better around power lines than an aluminum ladder.

### Failure to Tie Off the Ladder Top

 Testimony was also presented that it was easy to get on the flat roof of the Newman Chapel, and that using a rope to steady the ladder would have been a safe way to keep the ladder from contacting the power lines. Dr. Flanigan testified the accident could have been avoided by tying a rope to the top of the ladder and controlling it from the roof. Mr. Hoeft admitted that he was familiar with typical warning labels on ladders. Such labels mention that the ladder should be tied off at the top of the building (and the base) for the sake of safety. Consequently, there was evidence that Mr. Hoeft had been warned and should have been aware of the value of tying off the top of the ladder.

We conclude, in view of the foregoing evidence, that there was an evidentiary basis supporting each of the challenged submissions because there was evidence that Hoeft knew or should have known of these methods to avoid the risk of contacting the power lines, and that he did not pursue these methods.

### Failure to Plead the Specific Submissions

Appellant also contends on appeal that the instruction was erroneous because Louisville Ladder did not specifically plead in its answer each and every element of the disjunctive submissions. He contends that the submissions about de-energizing the power lines, and failing to tie off the top of the ladder, were not specifically pleaded in defendant's answer. It is true that these specific allegations were not pleaded, but defendant did plead generally that plaintiff Hoeft failed to "take steps to guard against" the danger of the power lines and failed to "undertake precautions which were available to him that a reasonably careful user of the *product* would take." Arguably, these submissions were within the general scope of the

pleadings. *Kilmer v. Browning,* 806 S.W.2d 75, 84 (Mo.App.1991). There was no motion by plaintiff for a more definite statement with regard to the language of the answer. Plaintiff cannot now complain the answer was unduly vague. *Clark v. Olson,* 726 S.W.2d 718, 719 (Mo. banc 1987). At trial, no objection was made for the purpose of excluding the evidence related to these propositions on the ground that such evidence was outside the pleadings. *See Fisher v. McIlroy,* 739 S.W.2d 577 (Mo.App.1987). At the instruction conference, plaintiff failed to specifically object to submitting these allegations to the jury on the ground that they were outside the scope of the pleadings. Consequently, this point was not preserved for appeal even though raised in the motion for new trial. *Business Men's Assurance Co. of America v. Graham,* 891 S.W.2d 438, 455 (Mo.App.1994). The trial court is not guilty of error in allowing these submissions in the comparative fault instruction.

The judgment is affirmed.

All concur.