

# In the Missouri Court of Appeals
# Eastern District

<u>DIVISION THREE</u>

| | | |
|---|---|---|
| DOUGLAS OVERFIELD, | ) | No. ED112272 |
| | ) | |
| Respondent, | ) | Appeal from the Circuit Court |
| | ) | of the City of St. Louis |
| v. | ) | Cause No. 1922-CC00078 |
| | ) | |
| BNSF RAILWAY COMPANY, | ) | Honorable Annette Llewellyn |
| | ) | |
| Appellant. | ) | Filed: December 10, 2024 |

<u>Introduction</u>

BNSF Railway Company (BNSF) appeals the trial court's judgment in favor of Respondent Douglas Overfield (Overfield), after a jury returned a verdict of $2.75 million on Overfield's claim of negligence against BNSF under the Federal Employers' Liability Act (FELA) for injuries he sustained while working as a locomotive engineer. BNSF argues that the verdict director improperly contained two disjunctive bases for negligence, which were not supported by substantial evidence and constituted an improper roving commission. BNSF further argues the trial court erred in refusing BNSF's proffered withdrawal instruction. Given the nature of FELA, as well as Supreme Court of Missouri precedent upholding identical language in FELA verdict directors patterned, as here, after

Missouri Approved Instruction (MAI) 24.01, we find no instructional error. We affirm the judgment of the trial court.

Background

Overfield worked as a locomotive engineer for BNSF. On February 18, 2018, as Overfield was exiting a locomotive, his company-issued reflective vest caught on the rear door handle mechanism, causing him to fall and sustain severe spinal injuries. He is no longer able to work as an engineer with the work restrictions given by his orthopedic surgeon. Overfield filed against BNSF claims of negligence under FELA, and of negligence *per se* under the Locomotive Inspection Act (LIA), but only the FELA claim was submitted to the jury.

Overfield presented evidence that he exited two locomotives that day. The first was equipped with a short walkway or platform outside the door that led to two steps descending to ground level. The second locomotive, on which Overfield was injured, had steps immediately outside the door. Both had a narrow doorway that Overfield had to turn sideways to pass through. The second locomotive also had a protruding door handle and bolt-locking mechanism that extended from the door, unlike other locomotives in BNSF's fleet that have a recessed lock or small knob. The only handrail outside the door of the second locomotive required an employee to reach past the door handle of the open door.

BNSF safety policy required employees to maintain "three-point contact" when exiting a locomotive, which is contact with the locomotive using either two hands and one foot, or two feet and one hand. Overfield testified that some locomotives had "grab irons" by the door frame, but the second locomotive, on which he was injured, did not. There was also evidence that some locomotives had two handrails available as employees exit the

2

cab. Overfield testified he did not receive training regarding exiting a locomotive like the second locomotive; specifically, how to use a handrail that was partially blocked by the door of the locomotive.

BNSF policy also required its employees to wear reflective clothing anytime they were outside the cab of a locomotive, which included while they exit the locomotive. Many types of reflective clothing were permitted under this policy, but at the time of Overfield's injury, BNSF issued only reflective vests to its employees free of charge. Overfield presented evidence that the zippered vests like the one he was wearing when he was injured, had large arm holes that were prone to snag, and that prior to his injury BNSF had received numerous reports of employee injuries or near-injuries resulting from vests snagging on various locomotive components, including door handles. BNSF had therefore made available tear-away vests, designed to tear apart if snagged, in order to address the issues with the zippered vests. However, BNSF received complaints about the tear-away vests not working properly. At the time of Overfield's injury, BNSF policy allowed employees to choose to wear either zippered or tear-away vests.

Overfield submitted only his FELA claim to the jury. He argued that the reflective vest with a known snag risk was unsafe in the conditions of exiting through the narrow doorway with a protruding handle and steps immediately outside the door, with the only handrail being partially blocked by the open door. The trial court gave the following verdict director to the jury:

Instruction 7

In your verdict, you must assess a percentage of fault against BNSF Railway Company whether or not plaintiff was partly at fault if you believe:

3

First, conditions for work were not reasonably safe and defendant knew or by using ordinary care could have known of such conditions and that they were not reasonably safe, and

Second, with respect to such conditions for work, defendant either failed to provide:
*reasonably safe conditions for work, or*
*reasonably safe reflective clothing*, and

Third, defendant, in any one or more of the respects submitted in Paragraph Second, was negligent, and

Fourth, such negligence resulted, in whole or in part, in injury to Plaintiff Douglas Overfield.

(emphasis added). BNSF objected to the italicized language above offered in the disjunctive, noting that Overfield's claim centered on the vest, and Overfield had abandoned his claim that the design of the second locomotive was inherently unsafe.

BNSF further requested a withdrawal instruction to direct the jury that they "may not consider the design of the locomotive or any of its parts or appurtenances as evidence of negligence in this case." Overfield argued this withdrawal instruction was too broad because the conditions of the locomotive, while not inherently unsafe, contributed to the unsafe conditions given the fact that Overfield was required to wear the vest with large arm holes as he exited the locomotive. The trial court denied the withdrawal instruction.

The jury returned a verdict assessing one hundred percent fault against BNSF for Overfield's injuries and awarding damages in the amount of $2.75 million. This appeal follows.

## Discussion

BNSF raises five points on appeal. In Points I and II, BNSF argues the trial court erred in submitting Instruction 7, the verdict director, because the record lacked substantial evidence to support the disjunctive bases for finding liability (Point I), and because the

4

language constituted a roving commission (Point II). In Point III, BNSF argues the trial court abused its discretion in denying BNSF's proffered withdrawal instruction. In Points IV and V, BNSF raises errors regarding the submissibility of any claim concerning a defect in the design of the second locomotive. Overfield maintains that he submitted no such claim, and the parties agree that in this light, both points are moot. Accordingly, we deny Points IV and V as moot and discuss only Points I through III.

## Point I

In Point I, BNSF argues the trial court erred in giving Instruction 7 because there was insufficient substantial evidence in the record to support the submission of the two disjunctive bases for finding BNSF negligent: failure to provide reasonably safe conditions for work, or failure to provide reasonably safe protective clothing. Specifically, BNSF argues that because Overfield limited his claim to the use of the vest, the only proper consideration for the jury was the second option—failure to provide reasonably safe protective clothing. BNSF argues there was no substantial evidence of any defects in the locomotive and Overfield waived any such claim, thus it was improper to submit failure to "provide reasonably safe conditions for work" to the jury. We disagree.

Overfield raises a threshold issue, arguing BNSF failed to include this issue in its motion for directed verdict and thus did not preserve it for appeal. In order to preserve a claim of instructional error, a party must make a specific objection prior to the jury retiring to consider its verdict, "stating distinctly the matter objected to and the grounds of the objection." Penzel Constr. Co., Inc. v. Jackson R-2 Sch. Dist., 635 S.W.3d 109, 127 (Mo. App. E.D. 2021) (quoting Mo. R. Civ. P. 70.03). Additionally, the party must include the

same objection in the motion for new trial. Wynn v. BNSF Ry. Co., 588 S.W.3d 907, 912 (Mo. App. W.D. 2019).

BNSF objected to Instruction 7 during the instructions conference, prior to submission to the jury. Regarding the phrase "reasonably safe conditions for work," BNSF argued in part that "those claims could conceivably be related to the steps on the locomotive or the doors on the locomotive of which there's been no evidence of any defect or condition that would render them unsafe." Additionally, in its motion for new trial, BNSF renewed its objection that the instruction was improper because it allowed the jury to find liability for a defect or unsafe condition of the locomotive when Overfield had not presented substantial evidence of any such defect or that BNSF had knowledge of any such defect.

While an argument regarding a plaintiff's failure to make a submissible case must be included in a motion for directed verdict, Heifetz v. Apex Clayton, Inc., 554 S.W.3d 389, 395 (Mo. banc 2018), such an argument is distinct from BNSF's specific claim here of instructional error; namely, that the record lacked substantial evidence to support one of the disjunctives submitted in the verdict director. BNSF preserved this argument by objecting during the instruction conference and including it in the motion for new trial. Penzel Constr. Co., 635 S.W.3d at 127; Wynn, 588 S.W.3d at 912.

Nonetheless, we do not find BNSF's argument persuasive on the merits. Whether a jury was instructed properly is a question of law we review *de novo*. SKMDV Holdings, Inc. v. Green Jacobson, P.C., 494 S.W.3d 537, 553 (Mo. App. E.D. 2016) (citing Hervey v. Mo. Dep't of Corr., 379 S.W.3d 156, 159 (Mo. banc 2012)). In evaluating whether substantial evidence supported a given instruction, we view the evidence in the light most favorable to the proponent of the instruction, together with all favorable and reasonable

6

inferences to be drawn therefrom. Id. We will reverse only where an instruction misdirected, misled, or confused the jury, resulting in prejudicial error that 'materially affects the merits of the action.'" Lowe v. Mercy Clinic E. Communities, 592 S.W.3d 10, 21 (Mo. App. E.D. 2019) (quoting Bach v. Winfield-Foley Fire Prot. Dist., 257 S.W.3d 605, 608 (Mo. banc 2008)).

"In the case of a disjunctive instruction, each submission must be supported by substantial evidence." Id. (citing Berra v. Union Elec. Co., 803 S.W.2d 188, 190 (Mo. App. E.D. 1991)). "There is no requirement, however, that each disjunctive be supported by independent, or different evidence." Id. (citing Stewart v. Sioux City & New Orleans Barge Lines, Inc., 431 S.W.2d 205, 209 (Mo. banc 1968)). Nor must each disjunctive constitute an independent cause of the damages. See Williams v. Mercy Clinic Springfield Communities, 568 S.W.3d 396, 415 (Mo. banc 2019). That "subparts of a jury instruction might causally contribute to the same damages does not necessarily mean each subpart is not supported by substantial evidence." Id.

Additionally, FELA has a relaxed standard of proof, finding liability where the employer's negligence is "the slightest cause of the injury." Euton v. Norfolk & W. Ry. Co., 936 S.W.2d 146, 151 (Mo. App. E.D. 1996). "Recovery under FELA is appropriate even if the employee's injury was caused by the cumulative effect of a series of incidents." Id.; see also Stewart v. Alton & Southern Ry. Co., 849 S.W.2d 119, 126 (Mo. App. E.D. 1993) (recovery permitted even where railroad's negligence plays small part in injury combined with employee's weakened health condition).

Here, BNSF argues that Overfield's entire claim was represented by the subpart "reasonably safe reflective clothing" and because there was both no claim that the

7

locomotive had a design defect and no evidence regarding any known safety defect, the "reasonably safe working conditions" subpart was unsupported by substantial evidence and therefore improperly included in the verdict director. However, Overfield did not need to present evidence that either the vest or the working conditions of the locomotive were inherently unsafe, or that they each constituted an independent cause of his damage, in order to submit the verdict director in the disjunctive. See Williams, 568 S.W.3d at 415.

In Williams, an injured patient presented three disjunctive bases for negligence, which the defendant hospital argued were contained in the third: "fail[ure] to take an adequate history in regards to [the patient's] tremor," "fail[ure] to adequately consider [the patient's] medical chart as part of [the doctor's] comprehensive review," or "fail[ure] to timely refer [the patient] for a neurological consultation." Id. The Supreme Court of Missouri concluded that while it was possible the doctor's failure to take an adequate history or to adequately consider the patient's chart resulted in the doctor's failure to make a timely referral, that does not mean each disjunctive was not supported by substantial evidence. Id. at 416. The court noted there had been evidence that the doctor could have addressed the patient's medical condition through other avenues than a referral, such as a blood test or MRI. Id. The court also noted that "subparts of a jury instruction are often causally related," and submitting them together when supported by substantial evidence is not error. Id. at 415-16.

Here, while Overfield's claim centered on the use of this particular type of vest, Overfield conceded and the evidence at trial reflected that the vest would not pose an injury risk if used in open air, or if Overfield had not been required to put it on until after exiting the cab of the locomotive. Likewise, Overfield did not argue that the design of the second

8

locomotive was inherently dangerous, conceding that if Overfield had not had to wear the vest while exiting, this injury would not have occurred. Rather, Overfield argued and presented evidence to show that the use of this particular type of reflective clothing in this particular type of locomotive created a known risk of injury due to the narrow doorway, handrail placement, and likelihood of the vest's large arm holes snagging on the door handle. Overfield argued both the vest and type of locomotive together is what created the unsafe situation. The two disjunctives were causally connected here, and the jury could have found that changing either one of them would have prevented Overfield's injury. See Stewart, 431 S.W.2d at 209 (noting where negligence and unseaworthiness submitted in disjunctive, jury could have found either was direct cause of plaintiff's injuries, or that each contributed or concurred in causing in whole or part his injuries); Lowe, 592 S.W.3d at 23 (rejecting argument that plaintiff must show evidence that each disjunctive "in a vacuum and separate from any other facts and circumstances" was negligent).

Instruction 7 was supported by substantial evidence, and the trial court did not err in submitting it to the jury. Point denied.

Point II

BNSF argues the trial court erred in giving Instruction 7 because it was a roving commission. Specifically, BNSF argues that the only unsafe condition on which Overfield premised his FELA claim was the alleged risks posed by wearing the vest while exiting and moving through the locomotive, but the phrase "reasonably safe conditions for work" allowed the jury to roam freely through the evidence and find BNSF liable for some unspecified conditions other than failure to provide reasonably safe reflective clothing. We disagree.

9

Instruction 7 was patterned after MAI 24.01, which is designated for use in FELA cases.  In relevant part, it includes four possible disjunctive bases for liability based on a defendant's failure to provide any of the following:

> reasonably safe conditions for work, or
>
> reasonably safe [appliances], or
>
> reasonably safe methods for work, or
>
> reasonably adequate help[.]

MAI 24.01(B) (8th ed).  Here, Overfield's proposed instruction submitted the first two subparts, the second of which read "reasonably safe equipment."[1]  BNSF objected to that phrase and requested that the instruction be more specific, limiting "equipment" to "reflective clothing," which the trial court granted.  Thus, Instruction 7 contained only one deviation from the MAI pattern instruction, at the request of BNSF.

The use of an applicable MAI is presumptively correct.  Sherry v. City of Lee's Summit, 623 S.W.3d 647, 658 (Mo. App. W.D. 2021).  The use of this particular MAI has been repeatedly upheld by Missouri courts.  See, e.g., Bair v. St. Louis-San Francisco Ry. Co., 647 S.W.2d 507, 510 (Mo. banc 1983) (citing Dunn v. St. Louis-San Francisco Ry. Co., 621 S.W.2d 245 (Mo. banc 1981)), abrogated on other grounds by St. Louis Sw. Ry. Co. v. Dickerson, 470 U.S. 409 (1985).  Moreover, the Supreme Court of Missouri has rejected the argument that MAI 24.01 constitutes a roving commission.  Dunn, 621 S.W.2d at 255 (noting "reasonably safe methods of work" "defined the issue in accordance with the basic premise of MAI in submitting only ultimate issues and avoiding evidentiary detail in instructions").  Accordingly, our Courts of Appeals have similarly found no roving

---

[1] Footnote 6 of MAI 24.01 permits substitution of the word "equipment" for "appliances" where appropriate.

commission where a verdict director uses the phrase "reasonably safe conditions for work." Miller v. Norfolk S. Ry. Co., 591 S.W.3d 29, 44-45 (Mo. App. W.D. 2019) (finding more specific disjunctives in contributory negligence instruction were not roving commissions, noting that each was more specific than "reasonably safe conditions for work" contained in negligence verdict director and upheld by Supreme Court of Missouri in Dunn); Dickerson v. St. Louis Sw. Ry. Co., 674 S.W.2d 165, 171 (Mo. App. E.D. 1984) ("reasonably safe conditions for work" is not roving commission, following Dunn), rev'd on other grounds by St. Louis Sw. Ry. Co. v. Dickerson, 407 U.S. 409 (1985).

BNSF has provided no reason we should depart from this prior authority here. Further, as discussed above, the jury heard evidence that changing any one of several conditions would have prevented Overfield's injuries, including the reflective clothing, the policy requiring the vest to be worn while exiting the locomotive, providing training for employees on how to exit to avoid the vest snagging, or various aspects of the locomotive itself. The evidence and argument at trial sufficiently explained and gave meaning to the "reasonably safe conditions" language in the verdict director. See Lowe, 592 S.W.3d at 22 (finding no roving commission where evidence at trial sufficiently explained and thereby gave meaning to the phrase "rule out" contained in subpart "failed to rule out [a particular medical condition]" in verdict director) (citing Bell v. Redjal, 569 S.W.3d 70, 95 (Mo. App. E.D. 2019)). Point denied.

### Point III

BNSF argues the trial court abused its discretion in refusing BNSF's proffered withdrawal instruction, which would have advised the jury they "may not consider the

design of the locomotive or any of its parts or appurtenances as evidence of negligence in this case." We disagree.

We review a trial court's refusal of a withdrawal instruction for an abuse of discretion. Wilson v. P.B. Patel, M.D., P.C., 517 S.W.3d 520, 523 (Mo. banc 2017). We will find an abuse of discretion only where the ruling is "clearly against the logic of the circumstances then before the trial court and is so unreasonable and arbitrary that the ruling shocks the sense of justice and indicates a lack of careful deliberate consideration." Id. (quoting Dodson v. Ferrara, 491 S.W.3d 542, 552 (Mo. banc 2016)).

Here, BNSF argued that because Overfield had abandoned any claim of a defect in the locomotive and was limiting his claims solely to defects in the vest, the jury should be instructed not to consider any evidence offered in support of any design defect claim. Overfield responded that the proposed withdrawal instruction, prohibiting the jury from considering "the design of the locomotive or any of its parts or appurtenances as evidence of negligence," was overbroad because his submitted claim included consideration of the various aspects of the locomotive and the safety risk posed by the requirement to wear this particular vest while exiting this particular locomotive, apart from any independent defect in the locomotive.

We have already discussed that the related bases presented in the disjunctive verdict director were supported by evidence, and it was entirely appropriate, given the circumstances of this case, for the jury to consider them together. Removing from the jury's consideration any evidence regarding the design or parts of the locomotive would have prevented them from considering evidence probative to the determination of Overfield's actual FELA claim. Thus, BNSF's proffered instruction was overly broad.

12

Moreover, while it might have been appropriate to give a withdrawal instruction specifying that the jury could not consider evidence of a design *defect*, Overfield maintains that he actually presented no such evidence. Overfield agreed during his testimony at trial that there was no defect in the second locomotive. This is consistent with BNSF's argument elsewhere on appeal that Overfield did not present sufficient substantial evidence of a defect in the locomotive. Thus, the withdrawal instruction here was unnecessary.

It is not the role of the trial court to correct a defendant's erroneous instruction, and BNSF has not shown that the jury's consideration of the evidence presented at trial of the various aspects of the locomotive in the context of a person wearing the reflective vest at issue was improper. See Cluck v. Union Pacific R.R. Co., 367 S.W.3d 25, 34 (Mo. banc 2012) (trial court is under no duty to modify or correct defendants' erroneous instructions). The trial court did not abuse its discretion in refusing BNSF's proposed withdrawal instruction. Point denied.

## Conclusion

The trial court did not err in submitting the disjunctive verdict director here, patterned after MAI 24.01, which was supported by substantial evidence and was not a roving commission. Additionally, the trial court did not abuse its discretion in refusing BNSF's proposed withdrawal instruction. We affirm the trial court's judgment.

_____
Gary M. Gaertner, Jr., J.

Philip M. Hess, P.J., and
Renee D. Hardin-Tammons, J., concur.

13