Elsie WOMACK, Plaintiff-Appellant.

v.

CRESCENT METAL PRODUCTS, INC., et al., Defendants-Respondents.

No. 36159.

Missouri Court of Appeals,
St. Louis District,
Division Two.

April 27, 1976.

Motion for Rehearing or Transfer
Denied July 12, 1976.

Application to Transfer Denied
Sept. 13, 1976.

Richard C. Witzel, Rosecan, Popkin & Chervitz, St. Louis, for plaintiff-appellant.

Joseph M. Kortenhof, St. Louis, Hiram W. Watkins, Sullivan & Watkins, Clayton, for defendants-respondents.

STEWART, Judge.

This is an action for damages upon the theory of strict liability which was brought by Elsie K. Womack,[1] appellant, against Crescent Metal Products, Inc., respondent, and Southern Equipment Company. The jury returned a verdict of $25,000 in favor of appellant against Crescent Metal Products, Inc. and in favor of Southern Equipment Company against appellant. We shall refer to appellant as plaintiff and to respondent as Crescent.

Plaintiff, by this appeal, seeks a new trial on the measure of damages only. She contends that the court erred in failing to give a tendered instruction withdrawing from the jury any consideration of Workmen's Compensation payments made to plaintiff in arriving at their verdict; that the court should have granted a mistrial because of references to Workmen's Compensation payments; and that the court erred in restricting plaintiff's final argument. Crescent did not appeal and plaintiff did not appeal from the judgment in favor of Southern Equipment Company.

Plaintiff was employed by the Lutheran Altenheim Society of Missouri as a cook's helper. Her duties were to help prepare and serve meals. She was in the kitchen of the establishment when a serving cart with a sharp metal edge near the bottom was pushed against her, cutting her right heel and severing the Achilles' tendon. The cart had been manufactured by Crescent and purchased by the Altenheim from Southern Equipment Company. The jury by its verdict found that the cart was defective because of the sharp metal edge near the bottom of the cart.

The issues in this case focus upon the numerous references to Workmen's Compensation benefits, past and prospective, which were made throughout the trial of the case.

The first reference to the term Workmen's Compensation came in during plaintiff's case as a voluntary statement which was not responsive to any question. Plaintiff had lost considerable time from her employment. Mr. Vedder, the Assistant Administrator of the Altenheim was called to testify with respect to plaintiff's lost wages. Plaintiff had asked Mr. Vedder if the W–2 forms would show the salary received and be an accurate reflection of the days worked in a given period. Mr. Vedder hesitated and was then asked if plaintiff was paid at a particular rate of pay. The following then occurred:

"Q: All right. And, do you remember her rate of pay in January 1970?

A: Without referring to records I would say it was probably about $1.65 an hour, something like that.

Q: All right.

A: If I may in reference to your statement about the W–2's, the Altenheim— Lutheran Altenheim policy was that Mrs. Cook since this was an injury that was of certainly no fault of her own we continued to in effect pay her her salary that she would have earned had she been employed by making up the difference between her salary and what the Workmen's Compensation provided."

On cross-examination of this witness counsel for Crescent asked:

"Q: Now, sir, you said that she was paid a certain amount of money even while she was not working to make up

---

1. Mrs. Womack will sometimes be referred to as Mrs. Cook, her former married name.

the difference between what she got from Workmen's Compensation and what she would have earned had she been working on the job all the way through?"

Plaintiff's counsel sought a conference, protesting that the witness had not mentioned Workmen's Compensation. The court advised that Workmen's Compensation had been mentioned. After the testimony of the witness was read back plaintiff's counsel apologized for having misunderstood.

Crescent then asked a question in substantially the same form. The answer of the witness was not responsive and Crescent started to pursue the matter. Plaintiff, at that point, objected to any further references to Workmen's Compensation. After a side bench conference the objection was overruled. Crescent then made two direct references to Workmen's Compensation in the subsequent cross-examination of Mr. Vedder. On re-direct of this witness plaintiff's counsel sought to question Mr. Vedder concerning the source of funds to pay the premium for Workmen's Compensation. He stated that his purpose was, ".  . to lay a foundation to show the collateral source rule is being violated and will be further violated by any effort on the part of the defendants to show that this lady was covered by Workmen's Compensation." Crescent's objection to this line of questioning was sustained.

On recross-examination Crescent continued to pursue the matter with the following line of inquiry testimony:

"Q: Mr. Vedder, so there is no confusion about this matter, Mrs. Cook was under Workmen's Compensation at the time of her injury, was she not? You carried Workmen's Compensation insurance?

A: Right.

"Q: And, you paid a premium so that when people are injured on the job they'll get their doctor bills paid and they also get a certain amount per week during the time they're off, isn't that true?

A: Correct."

When plaintiff testified her counsel then felt it necessary to elicit the information that medical expenses in the sum of $5317.20 and temporary disability in the sum of $1908 had been paid by the compensation carrier. She also testified that she would be required to repay those sums from any recovery in this case. At Crescent's request, it was brought out that no restitution would be required if she made no recovery in the case on trial.

On cross-examination counsel for Crescent questioned plaintiff with respect to her pending claim for permanent partial disability.[2] In all there were at least 28 references to "Workmen's Compensation" before the jury.

At the close of the case plaintiff sought a mistrial for the reason that the subject of Workmen's Compensation had become so much a part of the case that plaintiff could not obtain a fair trial. After an adverse ruling plaintiff submitted a withdrawal instruction which was refused.

We shall first consider plaintiff's contention that the court committed reversible error when it refused to give her proffered instruction A which reads as follows:

"'The evidence concerning payments under Workmen's Compensation is withdrawn from the case and you are not to consider such evidence in arriving at your verdict.'"

■ It is well settled in this state that evidence that payments made to a plaintiff under the Workmen's Compensation Act, are not ordinarily admissible in an action

2. "Q. . . . In other words, your claim is still open for your final rating on disability and no matter what this jury does not do you still have that claim pending in the Workmen's Compensation Commission at this time, isn't that correct?

A. Yes, sir."
. . . .

"Q. . . . Well, you have not received a lump sum of money as you're entitled to under the law other than what you received so far? You received medical expenses and temporary weekly benefits, but you have not received a lump sum award yet, have you?

A. No, sir."

for that injury against a third party as a defense to the tort action or for the purpose of mitigating the damages recoverable. *Pritt v. Terminal R.R. Ass'n of St. Louis*, 251 S.W.2d 622 (Mo.1952). The introduction of evidence of payments under the Workmen's Compensation Act injects an issue foreign to those raised by the pleadings in such a case. *State ex rel. Transit Casualty Co. v. Holt*, 411 S.W.2d 249 (Mo.App.1967).

■ The office of an instruction in the nature of plaintiff's instruction A is "to clarify what the jury is to consider in assessing damages." MAI 34.02 Committee Comment. The same comment quotes extensively from *Roberts v. Emerson Electric Manufacturing Company*, 362 S.W.2d 579 (Mo.1962) which holds that where the evidence in a case is such that it may lead to the raising of a false issue it is not sufficient to merely instruct as to the issues properly raised but it is necessary to guard against the consideration of the false issue by a proper instruction.

■ This court in *DeMoulin v. Kissir*, 446 S.W.2d 162, 166[5–7] (Mo.App.1969) has held that the failure to give a proper withdrawal instruction where there is evidence which might raise a false issue is reversible error.

The only reference to the fact that the employer or insurer under Workmen's Compensation has the right of subrogation came from the oral testimony of the plaintiff after Workmen's Compensation had been injected into the case. The function of the jury, as they were advised, was to determine the facts from the testimony of the witnesses and in so doing they were the judges of the credibility of the witnesses. The questions of law would be given to them by the court.[3] Without an instruction on the law to the contrary they were at liberty to find that repayment did not have to be made by plaintiff and assess her damages accordingly. Workmen's Compensation became one of the dominant issues in the case and under the circumstances of this case it became necessary to give the tendered instruction withdrawing that issue from the jury's consideration of the case.

Crescent does not directly seek to justify the failure of the trial court to give the withdrawal instruction. Crescent contends that the evidence once having come into the case without objection the continued admission of such evidence is harmless error. He cites us to *Grantham v. Herod*, 320 S.W.2d 536 (Mo.1959). In *Grantham*, plaintiff intentionally offered a repair bill in evidence in his case in chief. It had the notation: "Mail copy to—Elliot Ins. Agency, Buckner Mo." Over plaintiff's objection defendant's cross-examination revealed that Elliot Ins. Agency wrote the insurance on plaintiff's automobile. The court held l. c. 538:

"Plaintiff placed the exhibit in evidence without limitation of any kind. He was, of course, subject to legitimate cross-examination concerning the complete exhibit. Cf. *Young v. Sinclair Refining Co.*, Mo.App., 92 S.W.2d 995, 1002[10][11, 12]. The fact, standing alone, however, that the notation to mail the repair bill to a named insurance agency was on the exhibit would not justify the disclosure, over proper objection, of the further information that plaintiff had his automobile insurance with that agent *if such was wholly irrelevant and immaterial under any view of the issues.*" (emphasis added)

The court found that under the particular circumstances of that case the cross-examination had some relevancy to the issues.

We believe the principle sought to be invoked by Crescent is that now classified as "curative admissibility;" also sometimes referred to as "invited error." The rule applied in Missouri has been extracted from I Wigmore on Evidence, Third Edition, § 15, p. 304 and provides that when a party has introduced illegal evidence ". . . the opponent may reply with similar evidence *whenever it is needed for removing an unfair prejudice which might otherwise have ensued from the original evidence*, but in no

---

3. Instruction No. 1. MAI 2.01.

other case." See *Biener v. St. Louis Public Service Co.,* 160 S.W.2d 780 (Mo.App.1942) and *Ferguson v. Missouri Pacific R. Co.,* 442 S.W.2d 549 (Mo.App.1969).

In the case at hand the first reference to Workmen's Compensation was injected as an unresponsive voluntary statement by an independent witness. This evidence did not result in unfair prejudice to Crescent. As said in *Ferguson v. Missouri Pacific R. Co., supra,* at 555, ". . . countervailing illegal evidence 'of the same caliber' is not needed as no harm resulted and none need be 'neutralized'."

The following guideline from Wigmore seems apropos to the instant case:

"Rules of curative admissibility are not inexorable commands binding upon the courts. Accordingly, if through inadvertence of counsel it becomes manifest that a miscarriage of justice would ensue from invoking the rule, the Court should have no hesitancy in granting a new trial." I Wigmore on Evidence, 1975 Supp., § 15 p. 309 addition to text.

Plaintiff did protest Crescent's cross-examination of Mr. Vedder but apologized for not having heard the first reference to Workmen's Compensation. However, when Crescent repeated the question after failing to obtain a responsive answer plaintiff interposed an objection which was overruled. This ruling would appear to be contrary to the above authority. This ruling, however, was not preserved and is therefore not specifically before us for a ruling.

■ The primary question at issue here is whether the jury was fully instructed. The evidence of Workmen's Compensation benefits was wholly irrelevant to the determination of liability or of damages. Whether the evidence came in by reason of inadvertence on the part of plaintiff or whether it was erroneously before the jury, it injected a false issue in the case. The court should have given the withdrawal instruction. The failure to do so under the circumstances of this case constituted reversible error. *DeMoulin v. Kissir, supra.*

Crescent finally contends that the issues raised by plaintiff are not before the court because plaintiff did not raise the issue of inadequacy of the damages, citing as authority *Anderson v. Bell,* 303 S.W.2d 93, 100 (Mo.1957). This contention is adequately answered by *State ex rel. Highway Commission v. Gravois Farmers Club,* 483 S.W.2d 786, 790 (Mo.App.1972) where it is said, ". . . we refuse to extend the holding in *Anderson, supra,* to require allegations of inadequacy as a prerequisite to considering allegation of prejudicial error."

■ In the final analysis it can not be said that inadequacy of the damages was not raised. When the only relief sought is a new trial on the issue of damages only it can hardly be said that the adequacy of damages has not been attacked.

In view of the fact that this case must be retried we do not feel it necessary to discuss the other issues raised by plaintiff as they are not likely to arise in the retrial.

Crescent did not appeal. There is no suggestion that the issue of liability was not fully developed and fairly tried. The matter upon which this case must be reversed affects only the amount of damages. Only that issue need be retried. *Hufft v. Kuhn,* 277 S.W.2d 552 (Mo.1955); *DeMoulin v. Kissir, supra.*

The judgment is reversed and the cause is remanded for a new trial on the issue of damages only.

CLEMENS, P. J., and KELLY, J., concur.