Josephine WILSON, Appellant,

v.

P.B. PATEL, M.D., P.C., and
Rohtashav Dhir, M.D.,
Respondents.

No. SC 95890

Supreme Court of Missouri,
en banc.

Opinion issued May 16, 2017

Wilson was represented by H. William McIntosh of The McIntosh Law Firm in Kansas City, (816) 221-6464.

The medical providers were represented by Justin D. Fowler and B.K. Christopher of Horn, Aylward & Bandy LLC in Kansas City, (81) 421-0700.

Mary R. Russell, Judge

Josephine Wilson brought a medical malpractice cause of action against defendants Rohtashav Dhir, M.D., and his practice group, P.B. Patel, M.D., P.C. The jury returned a verdict in favor of the defendants, and Wilson appeals. She claims the trial court abused its discretion by refusing to give her proposed jury instruction withdrawing evidence of her alleged informed consent to the medical procedure. Because informed consent was irrelevant to the case as pleaded and could only confuse the jury in its determination of the facts, the judgment is reversed and the case is remanded to the trial court.

**Facts and Procedural Background**

Josephine Wilson sought treatment beginning in 2000 for acid reflux and trouble swallowing. In 2004 and 2005, she underwent balloon dilation of her esophagus, which provided some long-term relief for her acid reflux. An ear, nose, and throat specialist diagnosed Wilson in the fall of 2009 with chronic pharyngitis (inflammation of the throat lining) and globus sensation (subjective feeling of something stuck in the throat causing difficulty swallowing but absent physical findings to suggest an abnormality). The specialist referred Wilson to Dr. Rohtashav Dhir, a gastroenterologist, for further consultation and evaluation.

Dr. Dhir first examined Wilson on December 2, 2009, and prescribed a medication for her acid reflux. He also scheduled an esophagogastroduodenoscopy ("endoscopy") for December 8 at an outpatient clinic. Dr. Dhir's notes from the December 2 appointment state Wilson understood the procedure and conclude "[s]he might need dilation of the esophagus depending on the findings."

On December 8, 2009, Dr. Dhir performed the endoscopy on Wilson to examine her esophagus and stomach down to her duodenum (the first section of the small intestine). He found gastritis (inflammation or irritation of the stomach lining) and a single polyp near the top of Wilson's esophagus, which he removed with forceps. Dr. Dhir's operative report stated that her "GE junction [where the stomach meets the esophagus] and the esophagus appear to be normal." According to Dr. Dhir's testimony, the procedure revealed "nothing in the duodenum that would stimulate any further action on my part or important to be noted."

Although the endoscopy revealed nothing abnormal, Dr. Dhir decided to perform an esophageal dilation: a procedure using a large, rubbery bore dilator to stretch the esophagus. He felt for resistance as he manually pushed the dilator down Wilson's esophagus, and later testified the "dilation went smooth" and he felt nothing other than the expected mild resistance. As he withdrew the dilator, Dr. Dhir noticed the guidewire was kinked. He performed another endoscopy and observed a tear in Wilson's esophageal lining. Dr. Dhir concluded the tear had been caused by the

dilation, as it is one of the known risks of the procedure.

A cardiothoracic surgeon repaired the esophageal tear, which necessitated opening Wilson's chest wall, spreading her ribs, and collapsing one of her lungs to reach her esophagus. The surgeon noted no abnormalities with her esophagus other than the tear. Wilson testified she has experienced constant pain in her ribs, nerves, and muscles since the surgery.

Wilson sued Dr. Dhir and his practice group, P.B. Patel, M.D., P.C., for medical malpractice. She argued the esophageal dilation was medically unnecessary and below the standard of care because the endoscopy revealed she had a normal esophagus. Dr. Dhir defended his decision to perform the dilation despite the normal endoscopy findings because he thought it would help her dysphagia (difficulty swallowing). He also explained that abnormal esophageal tissues sometimes occur in the outer layers of the esophagus, which are not visible with endoscopy.

Prior to the endoscopy, Wilson signed a form titled "Consent to Treatment and Rendering of Other Medical Services." The form confirms the patient's doctor "has discussed the nature and purpose of the surgery/medical procedure and the risks and benefits associated with it." Wilson's theory for the case alleged Dr. Dhir was negligent in performing a medically unnecessary empiric dilation (dilation without a finding of stricture or abnormality) because the endoscopy showed normal findings. She did not present a claim for lack of informed consent, and Dr. Dhir did not raise informed consent as an affirmative defense. Nevertheless, Dr. Dhir's counsel stated in opening argument that Wilson had signed an "informed consent" that

read: "The risks and benefits have been explained to me. I'm aware that my doctor may choose to do other procedures if necessary." Wilson's counsel did not object to the mention of "informed consent."

Later during the trial, Dr. Dhir's counsel cross-examined Wilson about the "informed consent." Again, Wilson's counsel did not object and, on redirect, Wilson stated the form was one of many she was given to sign immediately before the endoscopy without sufficient time to read closely. During Dr. Dhir's direct examination, his counsel inquired if patients are asked to sign an "informed consent" form. Wilson's counsel objected on the grounds of relevancy, but the trial court overruled the objection.[1] Further, Dr. Dhir characterized esophageal perforation (tearing) as a "known complication" of esophageal dilation.

After all the evidence had been presented, Wilson's counsel requested a withdrawal instruction to remove "informed consent to the esophageal dilation" and discussion about eosinophilic esophagitis (a condition, referred to as "EoE," in which the person experiences an allergic reaction to food, which can cause inflammation of the esophagus) from the jury's consideration. The trial court seemed to agree at first that informed consent was a false issue but said it did not think a withdrawal instruction was warranted because Wilson had failed to timely object:

> [WILSON'S COUNSEL]: I certainly think that informed consent is a false issue that will confuse the jury, and this EoE is a false issue because she never had it, and there's no evidence to the contrary.

1. Wilson's counsel stated, "Your Honor, I'm going to object. This is not relevant, because there's nothing about informed consent in

the—." The trial judge cut him off, saying, "The objection's overruled. Go ahead."

THE COURT: I agree. And I don't know why parties insisted on inquiring about it and injecting it into the case, only to suggest the Court's going to err by not instructing that it be withdrawn from the case.

But the court later indicated confusion as to whether informed consent was an issue:

[WILSON'S COUNSEL]: As to the issue of informed consent, we'd have to put on causation evidence. There is no causation evidence offered from either side where the lack of informed consent caused or contributed to cause this [in-]jury. There is no—there's been no causation. You can't let the jury decide an issue that goes nowhere, and it goes nowhere.

THE COURT: Then you all don't have to argue it. The whole thing is here, your client was injured by virtue of a procedure that the doctor did that he should not have done and of which she would not have approved if she had known about it. That sounds like consent to me. The Court has marked Exhibits A and B. 34.02 respectively withdrawn—or refused to be given.

The trial court refused the instruction, and the case was submitted on the theory Dr. Dhir was negligent in performing the empiric dilation. Dr. Dhir's counsel stated in closing argument that Wilson "was aware and she agreed that there was a possibility that Dr. Dhir might do a dilation upon her" and suffered a "known complication." Wilson's counsel did not object.

The jury asked to see "a copy of the consent form that Ms. Wilson signed before the procedure with Dr. Dhir" during deliberations, which was provided to them. The jury returned a verdict for Dr. Dhir and P.B. Patel, M.D., P.C. Wilson appeals.[2]

## Standard of Review

A trial court's refusal of a withdrawal instruction will not be reversed absent an abuse of discretion. *Swartz v. Gale Webb Transp. Co.*, 215 S.W.3d 127, 129-30 (Mo. banc 2007). A trial court abuses its discretion when a ruling "is clearly against the logic of the circumstances then before the trial court and is so unreasonable and arbitrary that the ruling shocks the sense of justice and indicates a lack of careful deliberate consideration." *Dodson v. Ferrara*, 491 S.W.3d 542, 552 (Mo. banc 2016).

## Analysis

Wilson claims the trial court erred in refusing her proposed jury instruction withdrawing evidence of her alleged informed consent. She further alleges the trial court erred in permitting Dr. Dhir to argue Wilson consented to the esophageal dilation.

Trial courts have the discretion to give withdrawal instructions "when evidence on an issue has been received, but there is inadequate proof given for final submission of the issue to the jury." *Trimble v. Pracna*, 167 S.W.3d 706, 716 (Mo. banc 2005). Withdrawal instructions may also be given if a false issue is raised during trial. In *Sampson v. Missouri Pacific Railroad Co.*, 560 S.W.2d 573, 584 (Mo. banc 1978), this Court held that allowing the jury to consider evidence of workers' compensation payments in a negligence case creates a "danger that a false or foreign issue will thereby be raised and distort the contention of the parties as pleaded."

Such evidence has nothing to do with either liability or damages. There are, however, instances where for reasons of inadvertence or error, or intervention, or by agreement or stipulation, or as

---

**2.** This Court has jurisdiction pursuant to arti-

cle V, section 10 of the Missouri Constitution.

here, plaintiff's practical inability otherwise to prove the amount of medical expense, evidence indicating the payment of workmen's compensation benefits is, in some manner, placed before the jury.... [I]t may be necessary to clarify the limited use to which this evidence is to be put by reading a clarifying withdrawal instruction to the jury.

*Id.* (citations omitted).

*Sampson* concluded, "[W]here the evidence is of a character that might easily lead to the raising of a false issue, the court ought to guard against such an issue by appropriate instructions." *Id.* (alteration in original). *Sampson* further stated a trial court's discretion when deciding whether to give a withdrawal instruction "should be guided by the degree to which evidence has been introduced which might mislead the jury in their consideration of the case as it is pleaded." *Id.*

Wilson's counsel proposed the following withdrawal instruction concerning her alleged informed consent to the esophageal dilation: "The evidence and matter of plaintiff's informed consent to the esophageal dilation is withdrawn from the case and you are not to consider such evidence or matter in arriving at your verdict." The trial court rejected the instruction. Wilson argues the trial court abused its discretion by not giving the instruction because her alleged informed consent is irrelevant to her claim Dr. Dhir was negligent in performing an unnecessary empiric dilation. According to Wilson, the trial court's rejection of the withdrawal instruction allowed the jury to be misled by the false issue of her alleged informed consent, as evidenced by the jury asking to see the informed consent form.

The question of whether informed consent is an irrelevant and false issue in a medical negligence case is a matter of first impression for this Court. This Court has

acknowledged that cases alleging improper care and treatment and cases alleging lack of informed consent are separate theories of medical malpractice.

> The basic philosophy in malpractice cases is that the doctor is negligent by reason of the fact that he has failed to adhere to a standard of reasonable medical care, and that consequently the service rendered was substandard and negligent. In our judgment, this is true whether the alleged malpractice consists of improper care and treatment (the usual malpractice case) or whether it is based ... on an alleged failure to inform the patient sufficiently to enable him to make a judgment and give an informed consent if he concludes to accept the recommended treatment.

*Aiken v. Clary*, 396 S.W.2d 668, 673 (Mo. 1965). This distinction was further recognized in *Miller v. Werner*:

> It is apparent that evidence necessary to support an allegation of negligence in performance of surgery has nothing to do with and would not support or prove a charge of negligence in failing to secure an informed consent for such surgery. The first has to do with the act of operating and attendant exercise of skill; the latter, of necessity, is a matter preceding surgery.

431 S.W.2d 116, 118 (Mo. 1968), *abrogated on other grounds by Koerper & Co. v. Unitel Int'l, Inc.*, 739 S.W.2d 705, 706 (Mo. banc 1987).

Other states addressing this issue have agreed with Wilson that evidence of informed consent is irrelevant to a claim of negligence in providing care and treatment. *See Hayes v. Camel*, 283 Conn. 475, 927 A.2d 880, 889-90 (2007); *Baird v. Owczarek*, 93 A.3d 1222, 1233 (Del. 2014); *Brady v. Urbas*, 631 Pa. 329, 111 A.3d

1155, 1162-63 (2015); *Wright v. Kaye*, 267 Va. 510, 593 S.E.2d 307, 317 (2004).[3]

■ As explained in *Sampson*, a trial court's discretion when deciding whether to give a withdrawal instruction "should be guided by the degree to which evidence has been introduced which might mislead the jury in their consideration of the case as it is pleaded." [4] 560 S.W.2d at 584. This Court agrees with the conclusion reached by courts from other states that have considered this issue. As explained by the Supreme Court of Virginia:

> [T]he admission of evidence concerning a plaintiff's consent could only serve to confuse the jury because the jury could conclude, contrary to the law and the evidence, that consent to the surgery was tantamount to consent to the injury which resulted from that surgery. In effect, the jury could conclude that consent amounted to a waiver, which is plainly wrong.

*Wright*, 593 S.E.2d at 317; *see Hayes*, 927 A.2d at 890 ("[A]lthough evidence of the risks of a surgical procedure is relevant in the determination of whether the standard of care was breached, it was unduly preju-

dicial to admit such evidence in the context of whether and how they were communicated to the plaintiff."); *Brady*, 111 A.3d at 1162 (holding a patient's actual, affirmative consent is irrelevant to the question of negligence because "there is no assumption-of-the-risk defense available to a defendant physician which would vitiate his duty to provide treatment according to the ordinary standard of care").

■ Nevertheless, Dr. Dhir contends Wilson cannot complain about evidence she first introduced. "It is axiomatic that a defendant may not take advantage of self-invited error or error of his own making." *State v. Bolden*, 371 S.W.3d 802, 806 (Mo. banc 2012). Wilson counters that Dr. Dhir's counsel first introduced the subject of her alleged informed consent. Dr. Dhir's counsel used the phrase "informed consent" once to refer to the document Wilson signed,[5] and he told the jury in his opening statement, "The evidence will be that Ms. Wilson, prior to the procedure, *was aware* that Dr. Dhir might choose to dilate her esophagus after doing the [endoscopy]. She *agreed* to the procedure." (Emphasis added). As such, Dr. Dhir was the first to

---

3. Those cases considered motions *in limine* challenging the *admissibility* of evidence alleging informed consent rather than, as here, the *withdrawal* of such evidence. *See Hayes*, 927 A.2d at 887; *Baird*, 93 A.3d at 1231; *Brady*, 111 A.3d at 1158; *Wright*, 593 S.E.2d at 310. This procedural difference is immaterial.

4. Dr. Dhir argues Wilson's reliance on *Sampson*, 560 S.W.2d 573, and *Womack v. Crescent Metal Products, Inc.*, 539 S.W.2d 481 (Mo. App. 1976), is misguided. Both cases concern the introduction of evidence detailing workers' compensation benefits being paid to tort plaintiffs. *Sampson*, 560 S.W.2d at 584 ("We ordinarily look with disfavor upon the introduction of evidence of payments under the workmen's compensation act in this kind of case because of the danger that a false or

foreign issue will thereby be raised and distort the contention of the parties as pleaded."); *Womack*, 539 S.W.2d at 485 ("The evidence of Workmen's Compensation benefits was wholly irrelevant to the determination of liability or of damages."). Dr. Dhir contends both cases apply only to the introduction of workers' compensation benefits in tort cases. Dr. Dhir's argument is misplaced. Both *Sampson* and *Womack* address, in broad terms, when the trial court should give withdrawal instructions. Further, *Sampson* relies on *Estes v. Desnoyers Shoe Co.*, 155 Mo. 577, 56 S.W. 316, 319 (Mo. 1900), and *DeMoulin v. Kissir*, 446 S.W.2d 162, 166 (Mo. App. 1969), which do not concern workers' compensation issues. 560 S.W.2d at 584.

5. The document was titled "Consent to Treatment and Rendering of Other Medical Services."

introduce the idea Wilson consented to the empiric dilation.

Wilson further argues a withdrawal instruction is available even when the party seeking the instruction first introduced the evidence later sought to be withdrawn. She contends the trial court has an affirmative duty to ensure the jury is fully informed and guarded from considering false issues. *See Sampson*, 560 S.W.2d at 584. "Whether the evidence came in by reason of inadvertence on the part of plaintiff or whether it was erroneously before the jury, it injected a false issue in the case." *Womack v. Crescent Metal Prods., Inc.*, 539 S.W.2d 481, 485 (Mo. App. 1976). Additionally, "[w]hile MAI 34.02 is called a 'withdrawal' instruction, its use is not limited to withdrawing evidence which is accidently or improperly admitted. It is intended rather to clarify what the jury is to consider in assessing damages." MAI 34.02, Committee Comment B. [6]

The same reasoning applies to Dr. Dhir's argument that Wilson's failure to object earlier to the first reference to informed consent was invited error. For example, the court of appeals in *Womack* correctly held it was reversible error for the trial court to refuse a withdrawal instruction because the plaintiff did not ob-ject to initial mentions of workers' compensation benefits. 539 S.W.2d at 485; *see also Arnold v. Ingersoll-Rand Co.*, 908 S.W.2d 757, 764 (Mo. App. 1995); *Dillard v. Atchison, Topeka & Santa Fe Ry. Co.*, 882 S.W.2d 211, 214 (Mo. App. 1994); *DeMoulin v. Kissir*, 446 S.W.2d 162, 166 (Mo. App. 1969).

■ This Court joins the chorus of other state supreme courts and holds that evidence of alleged informed consent is irrelevant and can only mislead the jury in a medical malpractice case based on negligent performance of care and treatment. If such evidence is introduced at trial, it should be subject to a withdrawal instruction. Because the trial court abused its discretion by refusing the withdrawal instruction, the judgment is reversed.[7]

### Conclusion

The judgment is reversed and the case is remanded to the trial court.

Breckenridge, C.J., Stith and Draper, JJ., concur; Fischer, J., concurs in part and dissents in part in separate opinion filed; Wilson, J., concurs in opinion of Fischer, J. Powell, J., not participating.

---

**6.** The 2012 revision of MAI provides additional guidance about withdrawal instructions:

A.  A withdrawal instruction is only to be given when during the course of the trial a false issue, improper evidence, or evidence of an abandoned issue has been injected. The purpose of a withdrawal instruction may be served by the court sustaining a motion to strike and admonishing the jury to disregard the evidence. However, in certain instances, the trial court may determine that such action is inadequate, inappropriate or untimely and that a written instruction is necessary.

B.  The court may properly give a withdrawal instruction when it has received evidence upon an issue which is later abandoned either by choice or by reason of inadequate proof for final submission to the jury. The instruction to be given is that the issue is no longer open for the jury's consideration.

MAI 34.01 [2012 Revision], General Comment. For an issue to be considered "abandoned," it must have been introduced by a party asserting the claim. Consequently, MAI 34.01 and 34.02 support this Court's conclusion that a trial court's decision to give a withdrawal instruction should not be determined by whether the party seeking the instruction introduced the topic sought to be withdrawn.

**7.** Because this issue is dispositive, the Court does not address Wilson's other points on appeal.

Zel M. Fischer, Judge, concurring and dissenting.

I concur with the principal opinion on the issue of first impression that "informed consent" is irrelevant in a medical negligence case. I dissent from the principal opinion's holding that the circuit court abused its discretion in refusing to give the withdrawal instruction.

### Refusal to Give the Requested Withdrawal Instruction Was Not Without Careful Consideration and Did Not Constitute an Abuse of Discretion

"The trial court abuses its discretion when its ruling is clearly against the logic of the circumstances then before the trial court and is so unreasonable and arbitrary that the ruling shocks the sense of justice and indicates a lack of careful deliberate consideration." *Dodson v. Ferrara*, 491 S.W.3d 542, 552 (Mo. banc 2016).

Wilson does not deny she did not object to Dhir's counsel's discussion of the informed consent documentation in Dhir's opening statement. Wilson does not deny *both* parties injected testimony about the informed consent documentation without objection during the trial. Wilson does not even challenge the circuit court's subsequent ruling during trial overruling her relevancy objection to Dhir's testimony about the "informed consent" documentation. Rather, Wilson claims the circuit court abused its discretion in refusing to submit to the jury her withdrawal instruction regarding informed consent.[1]

No motion *in limine* regarding the "informed consent" document or Wilson's discussion of possible risks with Dhir or his staff was filed. When Dhir's counsel mentioned informed consent in opening statements, Wilson did not object. When Wilson was asked about the informed consent documentation during her cross-examination, her counsel did not object but rather attempted to discount the effect of the document in redirect by counting it as one of many documents that were hurriedly presented to Wilson immediately prior to her surgery, which gave her little or no opportunity to read the documentation in a meaningful manner. No objection to the topic of informed consent was made until Dhir was examined by his counsel in his case-in-chief. Thus, Wilson's "counter-attack" of the informed consent documentation and her counsel's delay in objecting to the evidence regarding informed consent resembles a trial strategy gone awry, not reversible error by the circuit court.

Even now, Wilson does not claim in her points relied on that the circuit court erred in overruling her objection to the relevance of this evidence. Wilson only claims error in the circuit court's refusal to grant the withdrawal instruction. And while I likely would not have found an abuse of discretion had the circuit court accepted the offered withdrawal instruction and read it to the jury, I cannot conclude the circuit court abused its discretion in refusing the withdrawal instruction, considering how much discussion of the evidence had already been introduced by *both* parties prior to the request for a withdrawal instruction. The circuit court is in the best

---

1. The circuit court possesses discretion to submit a withdrawal instruction " 'when evidence on an issue has been received, but there is inadequate proof for submission of the issue to the jury; when there is evidence presented which might mislead the jury in its consideration of the case as pleaded and sub- mitted; when there is evidence presented directed to an issue that is abandoned; or when there is evidence of such character that might easily raise a false issue.' " *Brizendine v. Bartlett Grain Co., LP*, 477 S.W.3d 710, 715 (Mo. App. 2015); *see also* MAI 34.01 [2012 Revision] General Comment.

position to determine whether the jury would be confused by a withdrawal instruction, and often, "the better practice is to tell the jury what the issues are rather than to tell them what [the] issues are not." *Nelson v. O'Leary*, 291 S.W.2d 142, 148 (Mo. 1956).